**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X

RUSSELL CARBONE,

                        Plaintiff,          **MEMORANDUM AND ORDER**

    v.                                          **18-CV-3509 (ST)**

ELISE MARTIN,

                        Defendant.
-----------------------------------------------------------X

**TISCIONE, United States Magistrate Judge:**

Plaintiff Russell Carbone ("Plaintiff") brought an action against Defendant Elise Martin ("Defendant") for quiet title and specific performance of a contract concerning the sale of the property at issue. Plaintiff further requests appointment of a court appointed receiver and proceeds apportioned according to the terms of the contract. Since previous attempts to settle the case were unsuccessful, Plaintiff filed the instant Motion for Summary Judgment ("Motion").

After Magistrate Judge A. Kathleen Tomlinson was no longer assigned to the case, the matter was reassigned to this Court for all further proceedings.

For the reasons set forth below, this Court GRANTS Plaintiff's Motion for Summary Judgment in its entirety.

    **I.**    **BACKGROUND**

The facts to this proceeding are complex and the procedural history is dispersed throughout the record. Therefore, pursuant to this Court's Minute Entry dated May 12, 2022, the factual background and procedural history below are derived from ECF entries 63 [Plaintiff's Motion] and 30, 81 and 82 [Defendant's Response and Opposition documents], plus supporting materials cited therein. *See* ECF 84.

## A. Factual Background

### a. Prior Foreclosure Action and Parties' Agreement Dated July 5, 2013

Plaintiff's instant action concerns the residential property located at 250 Erie Road West Hempstead, New York ("Property"). ECF 63 ("Mot.") at 1.[1] The relevant facts begin on or around 2011 where Defendant, then-owner of the Property, was previously sued in a foreclosure action in the Supreme Court of Nassau County. Defendant could not afford to defend the action on her own and resided out of state. *Id.* at 2. Therefore, Defendant contracted with Plaintiff to assist in the funding of a defense to the foreclosure action. *Id.* at 3; July 5, 2013 Agreement ("Agreement"), ECF 1-1. Notably, Defendant admits that she signed the 2013 Agreement. *See* Affidavit of Defendant ("Def. Aff.") at ¶¶ 19, 24, ECF 30-1.

Per the Agreement, Plaintiff and Defendant "retain[ed] Anthony Lopresti to represent [them] in the instant foreclosure & motion to expunge mortgage. . ., for a total fee of $17,500." *See* Agreement at ¶ 1, ECF 1-1. Plaintiff agreed to "pay $2500 forthwith & Lopresti [would] retain $15,000 after closing," and the parties "agree[d] to the sale of 250 Erie Rd." *Id.* at ¶¶ 2-3. Most importantly, "[b]oth parties agree[d] to WAIVE any objections to Carbone holding legal title to the DEED [to the Property] and the power of attorney, both filed as of record in Nassau County Clerk." *Id.* at ¶ 5.

The parties concede that Anthony LoPreseti successfully represented Plaintiff and Defendant during the foreclosure action. *See* Def. Aff. at ¶ 14, ECF 30-1. Additionally, Defendant also admits that Plaintiff hired Mr. LoPreseti. *Id.* Nor does Defendant contest that Plaintiff completed his obligations within the four corners of the Agreement. Rather, Defendant asserts that because the Acknowledgment on the Agreement is dated September 12, 2013, over two

---

[1] For ease of reference, given that Plaintiff's Mot. is a single pdf file totaling 216 pages, the pdf page for Mot. at 1 is page 17 of the pdf file.

months after July 5, 2013, that somehow undermines the Agreement's validity given the two-month gap. *See* Defendant's Letter Response to Plaintiff's Letter Request to Reopen Motion for Summary Judgment at ¶ 7 ("Def. Letter Response"), ECF 81-1.[2]

Additionally, Defendant asserts that she signed the Agreement while under duress. Specifically, Defendant provides that: "[Carbone] harassed [her] constantly by emails." *See* Def. Aff. at ¶ 19, ECF 30-1. Defendant further alleges that "[she] was in Georgia, had very little money on a regular basis and was even more fragile because the dearest person in [her] life died. [She] was a wreck. Mr. Carbone worked on [her] until [she] agreed to sign some paper with him so he could get paid for the time and expenses he would outlay in hiring an attorney to defend against the foreclosure. He knew [she] did not have that kind of money and that the 'agreement' dated July 5, 2013 was legally necessary." *Id.* at ¶ 13. Moreover, Defendant states that since she knew Plaintiff was an attorney, she believed Plaintiff when he said "the case has already been won." *See* Def. Letter Response at ¶ 9, ECF 81-1. In short, Defendant contends that Plaintiff's communications were a "constant interference in [Defendant's] everyday life," that Plaintiff knew that Defendant "had a nervous breakdown not too long before" those communications and that Plaintiff knew Defendant "was a tender individual." *Id.*

Finally, Defendant also asserts that the Agreement is based upon a defective Power of Attorney and quitclaim deed per a previous New York State District Court action ("New York Action") discussed in the next section below.

    *b. New York Action Involving Plaintiff's Power of Attorney and Deed to Property*

Prior to the formation of the Agreement, there was a separate New York Action concerning the validity of Plaintiff's Power of Attorney and quitclaim deed to the Property. On December 20,

---

[2] For ease of reference, the pdf page is page 10 of ECF 81-1.

2012, the New York State District Court held that Plaintiff did not have title to the Property because Plaintiff's quitclaim deed was based upon a Power of Attorney that was defectively notarized. *See Carbone v. Hurdle*, 38 Misc. 3d 1203(A) (Dist. Ct. 2012). The pertinent facts are as follows.

Russel Carbone commenced a holdover proceeding against Respondent Lavina Hurdle, Defendant Elise Martin's sister, to recover possession of the Property. Respondent Hurdle claimed that Carbone did not have title to the Property and that her sister, Elise Martin, was the true owner. Respondent Hurdle argued that the previous "transfer" of the Property from Elise Marin to Carbone was based upon a "void" Power of Attorney. *Id.*

The Power of Attorney was executed and notarized as follows. Carbone "testified that he hired Moses Crawford of Payment Reduction Services to act as his representative to purchase the [Property] in or about September of 2011." *Id.* Elise Martin "testified that she received the Power of Attorney in Georgia and executed the Power of Attorney, with a date of October 5, 2011, in Georgia." *Id* at 2. Elise Martin further stated that the Power of Attorney was blank when she signed it in Georgia after her divorce. *Id.*; Def. Aff. at ¶ 14, ECF 30-1. However, Elise Martin also testified that even though the Power of Attorney was executed in Georgia, "[t]he Power of Attorney was *notarized in New York* before Lisa Price who indicated that Elise Martin personally appeared before her." *Id.* (emphasis added). Carbone did not dispute these facts. *Id.*

Carbone subsequently "executed the Quitclaim Deed, dated November 9, 2011, using the Power of Attorney to transfer the title from Elise Martin to himself." *Id.* Elise Martin asserted that she had never previously met Carbone and that Mr. Crawford mentioned above, whom she had been dealing with, "never told her about the transfer of the property." *Id.* Ultimately, the New York Court held that "[t]he Power of Attorney executed in Georgia and notarized in New York is *defective* and cannot serve as a basis to transfer the Martin property." *Id.* at 8-9.

4

Notwithstanding the New York Court's decision in 2012, on July 5, 2013 Elise Martin signed the Agreement discussed *supra* waiving all objections to Plaintiff Carbone's claim for title of the Property based upon the same Power of Attorney and quitclaim deed.  ECF 1-1.

**B. Procedural History of Instant Case**

On June 15, 2018, Plaintiff filed a Complaint against Defendant alleging actions of Quiet Title under Article 15 of the Real Property Actions and Proceedings Law (RAPL) and Specific Performance of the Agreement.  *See* ECF 1.

On February 28, 2019, Defendant filed her initial Response to Plaintiff's Complaint.  While Defendant's Response does not specifically address each of Plaintiff's allegations, the Response denies Plaintiff's Complaint in substance.  *See* ECF 22.

On March 21, 2019, Plaintiff filed his initial Motion for Summary Judgment.  *See* ECF 23.

On May 14, 2019, Defendant filed her Response to Plaintiff's initial Motion for Summary Judgment arguing, among other things, that there is a factual dispute as to whether Defendant Elise Martin ratified the Power of Attorney and quitclaim deed via the Agreement.  *See* ECF 33.[3]

On June 11, 2019, the Honorable Gary R. Brown held a settlement conference with the parties and the case was purportedly settled.  *See* ECF Entry dated June 11, 2019.  However, the settlement did not materialize, and the case was reassigned to Magistrate Judge A. Kathleen Tomlinson, who held a status conference on February 10, 2020.  *See* ECF 48.[4]

On May 1, 2021, Plaintiff filed a renewed Motion for Summary Judgment.  *See* ECF 63.[5] However, on October 22, 2021, the Court denied Plaintiff's renewed Motion without prejudice with leave to refile after Plaintiff's Motion to Withdraw Consent of the referral of this matter had

---

[3] ECF indicates that Plaintiff filed his Reply to Defendant's Response on May 10, 2023 (four days *before* the Response was filed).  Regardless of the date, the Court notes the that the Reply is found at ECF 31.
[4] Note, while the conference was held on February 10, 2020, the ECF entry is dated February 11, 2020.
[5] Note, while the Motion is dated May 1, 2021, the ECF entry is dated May 4, 2021.  *See* ECF 63.

been decided. *See* ECF 64.

On November 1, 2021, the case was reassigned to this Court for all further proceedings. *See* ECF entry dated November 1, 2021.

On May 9, 2022 and May 10, 2022, Defendant filed her Rule 56.1 Statement in Opposition to Plaintiff's Motion. *See* ECF 81-82. Also on May 10, 2022, the Court held a telephone conference and provided that since the parties did not complete the sale of the Property, the Court will, therefore, review Plaintiff's Renewed Motion for Summary Judgment. *See* ECF 84.[6]

On September 16, 2022, this Court held one further telephone conference where Defendant reported that she was attempting to arrange a closing on the Property using a new lender. This Court noted that "[i]n the absence of an actual closing date, and given the extensive delays and multiple failed attempts at closing that have previously occurred, the Court does not intend to hold the motion in abeyance and will instead consider and issue a decision on the fully-briefed motion for summary judgment." *See* ECF 92.

## II.     JURISDICTION

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

## III.    LEGAL STANDARD

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A genuine dispute exists as to a

---

[6] Note, although the conference took place on May 10, 2022, the ECF entry is dated May 12, 2022.

material fact when "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In determining whether a genuine dispute exists as to a material fact, the Court is required to "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (internal quotation marks and citation omitted). "If there is evidence in the record from which an inference could be drawn in favor of the non-moving party on a material issue of fact, summary judgment is improper." *Holt v. KMI-Cont'l*, 95 F.3d 123, 129 (2d Cir. 1996).

A "party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," as mere "conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks and citation omitted). "The role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011). The moving party is entitled to judgment as a matter of law if the nonmoving party fails to "make a showing sufficient to establish the existence of [each] element essential to [his] case . . . since a complete failure of proof concerning an essential element of [his] case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

### IV. DISCUSSION

**A. This Court Concludes that Plaintiff Is Entitled to Summary Judgment on his Quiet Title Claim Based Upon the Parties' Binding Agreement**

    *a. The Court Holds That the Conditions Within the Four Corners of the Agreement Have Been Satisfied*

This Court holds that Plaintiff is entitled to summary judgment on his quiet title claim based upon the parties' binding Agreement. "To obtain summary judgment in an action to quiet

7

title pursuant to RPAPL article 15, 'the movant must establish, prima facie, that it holds title, or that the nonmovant's title claim is without merit.' " *See 1259 Lincoln Place Corp. v. Bank of New York*, 159 A.D.3d 1004, 1005 (2d Dep't 2018) (quoting *White Sands Motel Holding Corp. v. Trustees of Freeholders & Commonalty of Town of E. Hampton*, 142 A.D.3d 1073, 1074 (2d Dep't 2016)). Moreover, "[t]he fundamental, neutral precept of contract interpretation is that agreements are construed in accord with the parties' intent." *United Mgmt. Admin. & Mktg. Servs., Inc. v. Interstate Nat. Dealer Servs., Inc.*, 102 A.D.3d 766, 766 (2d Dep't 2013) (internal quotations and citations omitted). "When the terms of a written contract are clear and unambiguous, the intent of the parties must be found within the four corners of the contract, giving practical interpretation to the language employed and the parties' reasonable expectations." *Id.* "Thus, a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." *Id.* at 766-67.

Here, the parties executed a binding Agreement providing that "[b]oth parties agree to WAIVE any objections to Carbone holding legal title to the DEED and the power of attorney, both filed as of record in Nassau County Clerk." Agreement at ¶ 5, ECF 1-1. Defendant does not dispute that the terms of the Agreement have been satisfied. Instead, Defendant argues that "Mr. Carbone and Ms. Martin signed a [subsequent] Contract of Sale that has its own set of conditions precedent [that have not been satisfied]" and that the contract states "all prior agreements between the parties have either been specifically made part of the Contract of Sale as the four corners of that Contract of Sale are the only agreement between the parties." *See* Def. Letter Response at ¶ 10, ECF 81-1. This Court, however, disagrees.

While Defendant does not cite to a specific portion of the Contract of Sale, it appears that Defendant is referring to Paragraph 28(a), which states: "All prior understanding, agreements,

8

representations and warranties, oral or written, *between Seller and Purchaser* are merged in this contract. . ." *See* Contract of Sale at 5 (emphasis added), ECF 83-2.[7] Crucially however, *both* Russell Carbone and Elise Martin are the sellers in the Contract of Sale and Lavina E. Hurdle (Defendant's sister) and Dianna M. Slaughter are the purchasers. *Id.* In other words, the Contract of Sale is not *between* Russell Carbone and Elise Martin as Defendant suggests. Defendant offers no case law, and the Court has found none, suggesting this subsequent Contract of Sale where *both* Plaintiff and Defendant are sellers invalidates the parties' previous Agreement conveying title to Plaintiff. Furthermore, the parties also agree that Elise Martin never *closed* on any subsequent contract of sale. *See* Plaintiff's Statement of Facts at ¶ 17, ECF 63.[8] Thus, the Court finds that Defendant's argument about the Contract of Sale fails to raise a dispute of material fact.[9]

### b. The Prior New York State Court Action Does Not Invalidate Plaintiff's Title

The remaining question is whether Plaintiff possesses valid title based upon the previous New York Action, which held that the Power of Attorney was defectively notarized. This Court finds that the New York Action does not invalidate Plaintiff's title because Defendant subsequently ratified both the Power of Attorney and quitclaim deed via the Agreement.

Defendant reiterates that the New York Action already "decided that the Power of Attorney was ineffective due to the failure of the notarial acknowledgment" and that "[s]ince it was the Power of Attorney that allowed the Plaintiff herein to take title by quitclaim Deed of the property the court found the Deed void." Def. Memo of Law at ¶ 7, ECF 30; *see also* Def. Letter Response

---

[7] For ease of reference, given that the Contract of Sale is part of a 144-page document, the pdf page for Paragraph 28 is page 8. *See* ECF 83-2.
[8] For ease of reference, given that Plaintiff's Mot. is a single pdf file totaling 216 pages, the pdf page for Plaintiff's Statement of Facts at ¶ 17 is page 9 of the pdf file. *See* ECF 63. Defendant does not dispute Plaintiff's position anywhere in the record.
[9] Note, Defendant also argues other conditions have not been met, such as that the Property "must be given free and clear of all liens, judgments, and other impediments of title." *See* Def. Letter Response at ¶ 11, ECF 81-1. However, the Court finds these conditions do not change the analysis since they stem from the *subsequent* Contract of Sale.

9

at ¶ 7, ECF 81-1.  Defendant then analogizes this case to forgery and argues that "[a] deed based on a forgery is considered a nullity from its beginning."  Def. Memo of Law at ¶ 8 (citing *Faison v. Lewis*, 25 N.Y.3d 220, 226 (2015)), ECF 30; *see also id.* at ¶ 15 (citing *First Nat. Bank in Albuquerque v Enriquez*, 96 N.M. 714, 716 (1981)) ("It is also a well settled principle of law that a forged deed is a void deed and transfers no interest.").[10]

From the outset, this Court finds that Defendant's case law is distinguishable because the New York Action did not hold that the Power of Attorney or deed was *forged*.  Rather, the New York Action merely found that Carbone lacked authority to transfer the property to himself by quitclaim deed "[s]ince the Power of Attorney was defectively notarized."  *Carbone v. Hurdle*, 38 Misc. 3d 1203(A) at 9.  Hence, the lingering question, not briefed by the parties, is whether a defective notarization renders a Power of Attorney and subsequent deed void or merely *voidable*.

New York courts recognize that "unless rescinded, a voidable contract imposes the same obligations as though not voidable, and it is not void until the option of the wronged party is exercised."  *Matter of Fresh Meadows Jewish Ctr., Inc.*, 75 A.D.2d 814, 815 (2d Dep't 1980); *Wu v. Uber Techs., Inc*, No. 33964/2020E, 2022 WL 17826816, at *13 n.6 (N.Y. Sup. Ct. Dec. 20, 2022) ("A void contract is no contract at all; it binds no one and is a mere nullity. A void contract requires no disaffirmance to avoid it. . . Contracts are held to be voidable when one of the parties has the power either to avoid or to validate the agreement.") (quoting 22 NY Jur. 2d Contracts § 8 (2023)). Glaringly, Defendant has not cited any case law, nor has this Court found any, showing that a defective notarization renders the Power of Attorney or subsequent deed here *void* and

---

[10] This Court also notes that Defendant misstates the language of *First Nat. Bank* in Paragraph 15 of Defendant's Memorandum of Law.  Specifically, Defendant quotes the case as stating: "If fraud in factum such as a forged deed or a situation *analogous to a forgery* the deed is void ab initio and will not support subsequent title in any person." (emphasis added).  However, *First Nat. Bank* only discusses forged deeds, not situations "analogous to" forgery. Additionally, the phrase "void ab initio" is never mentioned in the *First Nat. Bank* opinion.

10

exempt from subsequent ratification via the Agreement.

Conversely, multiple New York cases have deemed Powers of Attorney merely *voidable* in cases far more extreme than the present facts, such as when a party was mentally incompetent. *See Bankers Tr. Co. of Albany, N. A. v. Martin*, 51 A.D.2d 411, 412 (3d Dep't 1976) ("A contract and a power of attorney made by an incompetent person prior to formal adjudication are not void, *but only voidable* and may be ratified and approved by the incompetent person upon recovering his competency. . .") (emphasis added); *Anonymous v. Anonymous*, 3 A.D.2d 590, 593 (2d Dep't 1957) ("[A] deed and powers of attorney executed by a person of unsound mind may be ratified after he regains his reason."); *Matter of Ciervo*, 124 A.D.2d 583, 584 (2d Dep't 1986) ("Consequently, the contract which was executed after [Mrs. Benfari] was already mentally incompetent was *voidable* at the option of Mrs. Benfari's conservator.") (emphasis added).

Per the above case law and Defendant's failure to provide any cases to the contrary, this Court concludes that the defective notarization, at most, rendered the Power of Attorney *voidable*. Then, Defendant ratified the Power of Attorney and quitclaim deed by signing the Agreement waiving Defendant's objections to either document. Thus, this Court finds that the prior New York Action does not invalidate Plaintiff's title.[11]

### c. Defendant Has Also Failed to Raise a Factual Dispute Concerning Duress

This Court also finds that Defendant failed to raise a factual dispute concerning duress. While Plaintiff's claim is not specifically framed as a "breach of contract," the Court will analyze the elements of the duress defense in the breach of contract context since Defendant asserts Plaintiff exercised undue influence over her during the formation of the Agreement.

---

[11] For similar reasons, this Court rejects Defendant's implicit argument discussed *supra* that the Agreement is somehow void since the Acknowledgment post-dates the Agreement itself by over two months. Again, Defendant has not provided any case law for this proposition and this Court has not found any either.

11

"In order to make out a claim of duress as an affirmative defense to breach of contract, a defendant must show that he was subjected to compulsion that was sufficiently great 'to overcome the exercise of [his] free will.' " *See Mathias v. Jacobs*, 167 F. Supp. 2d 606, 614 (S.D.N.Y. 2001) (quoting *Gerstein v. Broad Hollow Rd. Co.*, 75 A.D.2d 292 (1st Dep't 1980)). "A defendant claiming that he was induced to enter a contract as a result of duress must show: (1) a threat, (2) unlawfully made, (3) which caused involuntary acceptance of contractual terms, (4) because the circumstances permitted no alternative." *Id.*

Notably, Defendant never alleges *any* facts that suggest her "free will" was overcome when she signed the Agreement. Instead, Defendant makes the conclusory statement that:

> "Mr. Carbone has taken advantage of me since l found out about him. He is harsh and quick to talk. I understand that I should have understood those things I put my name to and my attorney has explained that to me. I was under such extreme duress and there was such undue influence over me. His emails never stopped." *See* Def. Aff. at ¶ 25, ECF 30-1.

Additionally, as discussed *supra*, Defendant also argues that "[she] knew Plaintiff was an attorney and she states she believed him when he said 'the case has already been won.' " *See* Def. Letter Response at ¶ 9, ECF 81-1. Plaintiff allegedly "barraged [Defendant] with phone calls" asking Defendant to sell the Property and Defendant submits that these communications constituted a "constant interference in [Defendant's] everyday life." *Id.* Plaintiff allegedly knew that Defendant "had a nervous breakdown not too long before" those communications and that Defendant "was a tender individual." *Id.* Again however, even taking Defendant's facts as true, Defendant fails to allege any facts suggesting that her freewill was *hindered* or that Defendant's actions were *involuntary*. Even more fundamentally, Defendant does not attempt to allege that any *threat* was made or that the communications were *unlawful*, meaning Defendant glaringly ignored two duress elements in her argument. Thus, Plaintiff is entitled to summary judgment on

his Quiet Title claim.

### B. This Court Concludes that Plaintiff Is Also Entitled to Summary Judgment on His Specific Performance Claim

This Court also holds that summary judgment is proper on Plaintiff's specific performance claim. "In order to obtain the remedy of specific performance, the complaint must show: (1) the making of the contract and its terms, including a description of the subject matter; (2) that the plaintiff is ready, willing, and able to perform the contract and has fulfilled all of the plaintiff's duties to date; (3) that it is within defendant's power to perform (as, in the case of specific performance of a real estate purchase agreement, a plaintiff should allege that defendant held title to the realty); and (4) that there is no adequate remedy at law (an element that need not be pled where the contract is for the sale of real property)." *See Lezell v. Forde*, 26 Misc. 3d 435, 440-41, 891 N.Y.S.2d 606, 611 (Sup. Ct. 2009) (quoting *Delisi v. Mastros*, 5 Misc. 3d 1024(A), 799 N.Y.S.2d 159 (Sup. Ct. 2004)) (citing 96 N.Y. Jur. 2d Specific Performance § 69 (Feb. 2023)); *Olin Corp. v. Lamorak Ins. Co.*, No. 84-CV-1968 (JSR), 2018 WL 1901634, at *15 (S.D.N.Y. Apr. 18, 2018) (citing *Lezell*, 26 Misc. 3d at 441, 891 N.Y.S.2d at 612) (same). Furthermore, when "an action seeks specific performance of a contract for the sale of property, real or personal, the contract is clear evidence of the owner's intention to sell, and that intention should be presumed to continue unless and until there is evidence to the contrary." *Id.* at 440. Finally, "[w]hether or not to award specific performance is a decision that rests in the sound discretion of the trial court. . ." *See Van Wagner Advert. Corp. v. S & M Enterprises*, 67 N.Y.2d 186, 191-92 (1986).

Here, the same facts concerning Plaintiff's quiet title claim render summary judgment appropriate for specific performance. First, the Agreement clearly describes the Property at issue. Second, the parties do not dispute that Plaintiff has satisfied his obligations under the Agreement itself. Recall, Defendant only argues that the subsequent Contract of Sale to Defendant's sister

13

creates additional obligations, but that contract is not *between* Plaintiff and Defendant. Third, the parties do not dispute that Defendant has the power to perform. Fourth, since the contract concerns the sale of real property, it is presumed that there is no adequate remedy at law. Thus, this Court concludes that Plaintiff is entitled to specific performance.

### C. This Court Also Concludes That Appointment of a Receiver is Appropriate

This Court also concludes that appointment of a receiver is appropriate. "A federal court has the power in equity to appoint a receiver to protect a party's interest in property." *See Varsames v. Palazzolo*, 96 F. Supp. 2d 361, 365 (S.D.N.Y. 2000) (citing Fed. R. Civ. P. 66). Moreover, "[w]hether a federal court should appoint a receiver in a diversity action is governed by federal law." *Id.* (citing *Prudential Ins. Co. of Am. v. Hilton Hotels, Corp.*, No. 95 CIV. 5575 (KMW), 1995 WL 758781, at * 1-2 (S.D.N.Y. Dec. 21, 1995)). "The appointment of a receiver is considered an extraordinary remedy and should be utilized only where clearly necessary to protect an interest by the plaintiff in property where the rights over that property are in dispute." *Id.* (citations omitted). However, "[a] decision to appoint or not to appoint a receiver is committed to the sound discretion of the trial court." *Id.* (citing *Rosen v. Siegel*, 106 F.3d 28, 34 (2d Cir. 1997)). The following factors are relevant to establishing the need for a receivership:

> [F]raudulent conduct on the part of defendant; the imminent danger of the property being lost, concealed, injured, diminished in value, or squandered; the inadequacy of the available legal remedies; the probability that harm to plaintiff by denial of the appointment would be greater than the injury to the parties opposing appointment; and, in more general terms, plaintiff's probable success in the action and the possibility of irreparable injury to his interests in the property.

*See id.*; *Nissan Motor Acceptance Corp. v. Nemet Motors, LLC*, No. 19CV03284NGGCLP, 2022 WL 6784868, at *2 (E.D.N.Y. May 5, 2022).

The Court finds that this case is "extraordinary" based upon Defendant's conduct to date regarding the Property. First, Defendant's suggestion that the deed here was based on "forgery,"

14

where the prior New York Action merely held that the notarization was "defective," raises significant concerns about Defendant's credibility. *See* Def. Memo of Law at ¶ 8, ECF 30. Second, this Court finds that there is a risk the Property will diminish in value since Defendant concedes that she has not paid homeowners insurance and real estate expenses on the Property. *See* Def. Letter Response at ¶ 18, ECF 81-1. Third, legal remedies are inadequate because Plaintiff is entitled to the specific Property at issue based upon the parties' binding Agreement. Fourth, any harm Defendant would endure does not change the analysis given the terms of the signed Agreement. Fifth, Plaintiff's success is probable and Plaintiff's injury is likely irreparable if the Court does not take measures to expeditiously resolve this action. This conclusion is bolstered when considering that nearly two years have elapsed between the parties' purported settlement before Judge Brown on June 11, 2019, which never came to fruition, and Plaintiff's instant Motion, dated May 1, 2021. *See* Plaintiff's Declaration in Support of Summary Judgment at ¶ 13, ECF 63.[12] Therefore, this Court orders appointment of a receiver.

V.      **CONCLUSION**

For the foregoing reasons, the undersigned GRANTS Plaintiff's Motion for Summary Judgment in its entirety.

---

[12] For ease of reference, given that Plaintiff's Mot. is a single pdf file totaling 216 pages, the pdf page for Plaintiff's Declaration in Support of Summary Judgment at ¶ 13 is pdf page 13. *See* ECF 63. Note, approximately *two* years have elapsed from the purported settlement and filing of the instant Motion, not three as Plaintiff states. *Id.* at ¶ 16. Given the additional time that the motion was held in abeyance so that the parties could attempt to finalize the settlement, however, it has been more than three years to date since the parties purported to settle the case.

**SO ORDERED.**

                                                /s/ Steven L. Tiscione
                                                Steven L. Tiscione
                                                United States Magistrate Judge
                                                Eastern District of New York

Dated: Central Islip, New York
March 13, 2023